**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

D. SAMUEL GOODELL,

        *Plaintiff,*

v.

KENNETH M. MALKIN,

        *Defendants.*
_____/

CASE NO. 20-10293
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON *SUA SPONTE* DISMISSAL**

**I.  RECOMMENDATION**

*Pro se* Plaintiff D. Samuel Goodell has sued Defendant Kenneth M. Malkin, his former public defender in a state-court criminal case, for retaliation in violation of his First Amendment rights. (ECF No. 1). Because Plaintiff proceeds *in forma pauperis*, (ECF No. 6), the Court has examined his complaint under 28 U.S.C. § 1915(e)(2). For the reasons that follow, I conclude that Plaintiff has failed to state a claim and therefore his complaint should be ***SUA SPONTE* DISMISSED**.

**II.  REPORT**

    **A.  Factual Background**

Plaintiff's complaint involves an underlying criminal case in state court in which he was charged with various felonies after rushing with Samurai sword in hand to the defense of a third-party under attack from multiple dangerous assailants. (ECF No. 1, PageID.2-3). Defendant, a

1

Bay County public defender, served as his attorney and provided ineffective assistance, Plaintiff contends, which resulted in criminal convictions. (*Id.*, PageID.2-4).

While incarcerated, Plaintiff sent Defendant a letter detailing what he "perceived as improprieties during his trial" by the prosecution, the court, and Defendant. (*Id.*, PageID.5). In his missive, Plaintiff "expressed his religious belief that if Defendant Malkin did not seek to right his wrongdoing, that Malkin's sins would be retained to him, that he would face great judgment, and that he would never be allowed to enter the Kingdom of Heaven." (*Id.*) Nowhere, however, did the letter threaten harm against Defendant, Plaintiff states. (*Id.*)

Sometime around March 2017, Plaintiff received parole and was informed that two of his conditions—wearing an electronic tether and banishment from Bay County, where he lived—"were due to claims made by Defendant Malkin that [Plaintiff] had threatened Defendant Malkin, and that Defendant Malkin was fearful of [Plaintiff]." (*Id.*, PageID.6). Plaintiff says a lawyer was hired on his behalf to investigate Defendant's accusations, but that Defendant refused to produce the letter when requested. (*Id.*)

On February 5, 2020, Plaintiff filed the present complaint, alleging two claims. One is for First Amendment retaliation violating Plaintiff's right to free speech, claiming that Plaintiff's critical letter prompted Defendant to retaliate by falsely reporting that Plaintiff had threatened him. (*Id.*, PageID.7). The second claim is that, for the same reasons, Defendant retaliated against Plaintiff's exercise of his freedom of religion. (*Id.*, PageID.10). A series of unfortunate events flowed from Defendant's retaliation, including bedbug bites, a missed family funeral, and extended parole because he could not pay the for tether. (*Id.*, PageID.7-12). Plaintiff's complaint asserts Defendant "knew that because of his position and authority within the Bay County Public

2

Defender's Office that he could put forth his false claims without having to provide the letter" or offer any other proof. (*Id.*, PageID.7).

**B.     Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), a court can *sua sponte* review and dismiss the complaints of plaintiffs proceeding IFP if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Id.*

3

**C.     Law and Analysis**

Plaintiff's constitutional claims are channeled through 42 U.S.C. § 1983. *See Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) ("[W]e have long held that § 1983 provides the exclusive remedy for constitutional violations."). To prevail under § 1983, a plaintiff must demonstrate facts showing (1) the conduct about which he or she complains was committed by a person acting under color of state law, and (2) the conduct deprived him or her of a federal constitutional or statutory right. In addition, a plaintiff must allege that he or she suffered a specific injury because of the conduct of a particular defendant and must allege an affirmative link between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Because § 1983 requires the challenged conduct to be performed under color of state law, the statute does not protect against actions by private individuals. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). In other words, "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001).

Thus, "not every action undertaken by a person who happens to be a state actor is attributable to the state. Although 'under "color" of law means under "pretense" of law,' the acts

4

of state officials 'in the ambit of their personal pursuits' do not constitute state action." *Id.* (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). For example, a city attorney did not act under color of law by sending responsive emails from her work account intoning on political matters involving individuals and entities who had dealings with and lawsuits against the city. *Hilton v. Mish*, 224 F. Supp. 3d 595, 601-602 (W.D. Mich. 2016). The court rejected the argument that the attorney's access to private information on the individuals gave her email "special weight that would not be accorded statements of a private citizen." *Id.* at 602. This contention amounted to a claim that the attorney "was acting under color of state law simply because she was the City Attorney. Such is not the law. As the Sixth Circuit recognizes, it is the nature of the action, not the status of the actor, that determines whether an individual was acting under color of state law." *Id.* As such, the attorney's expression of views on the entities, the individuals, and the lawsuit, was something "that any private citizen could have done without the aid of official authority," and was not an act under color of law. *Id.*

Purely private conduct can become state action if it is attributable to the state. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982). The Sixth Circuit generally employs three tests to make the "state action" determination: the state compulsion, nexus, and public function tests. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Under the first, the state must exercise coercive power or give overwhelming encouragement to the private entity's action. *Id.* (citing *Wolotsky*, 960 F.2d at 1335). The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state." *Wolotsky*, 960 F.2d at 1335. Finally, the nexus test examines whether "there is a sufficiently close nexus between the state and the challenged action of the [private] entity." *Id.* The analysis

5

centers upon the state's involvement in the challenged decision, and courts generally find state action only where the state made the decision or substantially encouraged it. *Id.*; *see also Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982) (finding no state action in nursing home's decision to lower residents' level of care because "[t]hose decisions ultimately turn on medical judgments made by private parties according to professional standards not established by the State"); *Lansing*, 202 F.3d at 831-34 (holding that a festival was not a state actor when it asked a participant to leave because none of the festival's many links to the city related to the disputed speech policy).

With regard to public defenders, the Supreme Court has held that these state officials "do[] not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Co. v. Dodson*, 454 U.S. 312, 325 (1981). One court has found that *Polk* covers claims that a public defender intended for his client, the plaintiff, to be convicted and incarcerated. *See Clay v. Friedman*, 537 F. Supp. 409, 411 (N.D. Ill. 1982). The Supreme Court has also held, however, that "state public defenders are not immune from liability under § 1983 for intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights." *Tower v. Glover*, 467 U.S. 914, 923 (1984).

Courts have also consistently held that reporting crimes or threats is not an act under color of state law. For example, in *Moldowan v. City of Warren*, the plaintiff sued a private citizen under § 1983, claiming she fabricated evidence and withheld exculpatory evidence during a criminal trial against the plaintiff. 578 F.3d 351, 364-365, 399 (6th Cir. 2009). Applying its three tests for attributing private action to the state, the court rejected the plaintiff's claim: "Providing

6

information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" *Id.* at 399 (citing, among other cases, *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("We know of no case in which the report of a state crime is action under color of state law under § 1983. The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or [42 U.S.C.] 1985.")); *see also Cox v. Duke Energy Inc.*, 876 F.3d 625, 633-634 (4th Cir. 2017) (holding that a private entity and its vice president did not act under color of law by reporting to the police that the plaintiff was flying a glider near the entity's nuclear plant because, among other things, the entity had its own interest in its facility's security and did not make the report or question the plaintiff pursuant to any governmental authority or purpose); *Jermano v. Taylor*, 2013 WL 1316970, at *3 (E.D. Mich. Feb. 28, 2013) ("[R]eporting Plaintiff's threats does not sufficiently allege a symbiotic relationship between Defendants and state actors."); *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 514 (E.D.N.Y. 2010) (noting that "the Second Circuit has held that the mere reporting of information to law enforcement is not sufficient to support a claim of state action by a private party," and holding that the defendants' reporting of crimes was not an action under color of law regardless of whether they "harbored any will toward Plaintiff, or that Plaintiff was ultimately acquitted of the charge" (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).

These holdings extend to cover private reports made by state employees. In *Myers v. Bowman*, 713 F.3d 1319 (11th Cir. 2013), the plaintiff attempted to retrieve an engagement ring and other property from his ex-fiancée, whose father, one of the defendants, was a county

7

magistrate judge. *Id.* at 1323. When the plaintiff failed to recover the goods, he kidnapped the ex-fiancée's dog (who had been staying with the judge), agreeing to exchange the canine for the engagement ring and funds that he was allegedly owed. *Id.* He got the ring but not the funds, and made off with the dog; the defendant judge threatened to lock him up and reported the theft of the dog over a communications device provided by the county for his official duties. *Id.* He also had the deputy clerk in his office report the crime on the government device. *Id.* at 1323-1324. Meanwhile, the judge was tailing the plaintiff, and shortly thereafter the police took up the pursuit as well. *Id.* at 1324-1325. During the inevitable denouement, when the cars all pulled over, the judge instructed the police officers to get the plaintiff out of his car. *Id.* at 1325. Once the plaintiff was apprehended, the judge launched into a screed, saying this was his county; a police officer chimed in that the plaintiff had stolen from a magistrate judge. *Id.* The judge then instructed the police to release him, with the warning that the plaintiff should not show his face in that county again. *Id.*

All of this was not enough for the judge to have acted under color of law with regard to the plaintiff's claim that the judge caused a false arrest by reporting the crime. *Id.* at 1329-1331. The court explained that the judge "did not act under color of law when he reported to police that someone had stolen his dog because, in reporting the crime, he 'act[ed] only as a private individual,' . . . and not 'in his official capacity or while exercising his responsibilities pursuant to state law.'" *Id.* at 1330. The court continued, "The theft occurred in connection with a private dispute and not a matter that was before Murry [*i.e.*, the judge] in his official capacity as magistrate judge, and Murry alleged a theft of private property, not any property that belonged to the government." *Id.* Moreover, the judge's use of government communication devices did

8

not change the outcome because the technology was not proprietary and the judge could have contacted the police on his private cell phone. *Id.* at 1330-1331. "Although Murry's position as a magistrate judge affected Miller's [the police officer's] decision to pursue" the plaintiff and he also instructed the plaintiff's removal from his vehicle, the officer had authority to pursue and would have arrested the plaintiff even if the judge was not on the scene. *Id.* at 1331. The judge did not invoke his authority to cause the arrest; he only did so after the arrest had occurred, which "fail[ed] to create a reasonable inference that Murry acted under color of law when he reported the theft of the dog." *Id.*

Another court found that a deputy sheriff (and his wife) who made allegedly false police reports and lied in court against a neighbor was not acting under color of law. *Woods v. Valentino*, 511 F. Supp. 2d 1263, 1266-1270, 1271-1273 (M.D. Fla. 2007). Even assuming the deputy had jurisdiction in the relevant region, his "status as a deputy sheriff had no bearing on his conduct; he could have engaged in the exact conduct if he was employed by a non-state entity or unemployed." *Id.* at 1273.

In the present case, Plaintiff fails to state a claim because his allegations do not demonstrate that Defendant acted under color of state law by reporting the alleged threats. To the extent that Defendant's report was somehow involved in his representation of Plaintiff, it would not constitute an act under color of state law. *Polk Co.*, 454 U.S. at 325. It does not appear from the complaint that Defendant used any governmental medium to communicate his report—and even if he did, it would not rise to the level of state action. *See Myers*, 713 F.3d at 1330-1331; *Hilton*, 224 F. Supp. 3d at 601-602. And Plaintiff alleges no conspiracy involving Defendant and state actors. *Cf. Glover*, 467 U.S. at 923.

Rather, when focused on the nature of the action at issue, *see Hilton*, 224 F. Supp. 3d 595, 601-602, it is apparent that Defendant's report related to a private dispute. There is no suggestion that the Defendant's report was somehow related to his position or authority as a public defender. *See Waters*, 242 F.3d at 359 ("[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. . . . The conduct allegedly causing the deprivation of a constitutional law must be 'fairly attributable' to the state."). It was a personal threat allegedly made against Defendant. The fact that that the underlying grievance concerned his representation of Plaintiff is, at best, irrelevant; to the extent that the report was entwined with the representation, it would place Defendant's action within the scope of *Polk Co.* Defendant had the right and ability to report threats against him irrespective of his status as a public defender. Put differently, neither his actual authority nor any abuse of that authority was necessary to take the action or even facilitate it. Moreover, Plaintiff's complaint meets none of the tests for determining that private action can be attributed to the state: the act of reporting a threat against one's self cannot be interpreted as a traditional public function performed by the government; Defendant was not compelled by the government to make the report; and nothing suggests that Defendant's relationship with the government had anything to do with his reporting the threat.

Plaintiff contends that Defendant's position allowed him to "put forth his false claims without having to provide anyone" proof. (ECF No. 1, PageID.7). It is, of course, implausible that one of the official, government-sanctioned perks of being a public defender is the authority to levy baseless accusations against one's own clients. Consequently, Plaintiff's argument must be taken as stating that the cachet associated with Defendant's position enabled his misdeed.

10

That argument is foreclosed by the reasoning in *Myers*, 713 F.3d at 1330-1331, where the defendant had leaned much more heavily on his status as a judge during the disputed action. Accepting Plaintiff's supposition here would place under color of state law many otherwise entirely private acts of state employees, and the more prestigious the employee's position the more likely it would be that the official acted under the color of state law. That is not how the law works. *See Hilton*, 224 F. Supp. 3d at 602.

In short, I conclude that Plaintiff has failed to state a claim because his complaint does not demonstrate that Defendant acted under color of state law as required by § 1983.[1]

## III. CONCLUSION

For the reasons above, Plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(1) for failing to state a claim.

## IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950

---

[1] To the extent Plaintiff also intended to claim ineffective assistance based on Defendant's representation in the criminal proceeding, the claim would be squarely precluded by *Polk Co.*, if not other caselaw as well. *See Floyd v. County of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) ("Floyd cannot state a claim for ineffective assistance against Haynes in this § 1983 suit. Defense attorneys, whether compensated by the State or retained by a client, do not act under color of state law when they perform a lawyer's traditional functions as counsel to the accused in a criminal proceeding."); *Taylor v. Miles*, 2020 WL 104682, at *2 (W.D. Tenn. Jan. 8, 2020) ("Claims of ineffective assistance must be brought in a habeas petition under 28 U.S.C. § 2254 and not in an action § 1983.").

11

(6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 19, 2020                S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to D. Samuel Goodell at P.O. Box 754, Bay City, MI 48707.

Date: February 19, 2020                By s/Kristen Castaneda
                                       Case Manager

12